2010 BNH 017
_____

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re:                                                                                       Bk. No. 07-12533-MWV
                                                                                              Chapter 7
Eugene E. O'Neil, Jr.,
                    Debtor

*Charles A. Russell, Esq.*
*Attorney for Debtor*

*Thomas J. Pappas, Esq.*
*Gail E. Bakis, Esq.*
*WIGGIN & NOURIE, P.A.*
*Attorneys for Dawn M. O'Neil*

*Victor W. Dahar, Sr., Esq.*
*VICTOR W. DAHAR, P.A.*
*Chapter 7 Trustee*

## MEMORANDUM OPINION

The Court has before it Dawn O'Neil's ("Ms. O'Neil") motion for determination that proceeds from sale of Deployment Technologies, Inc. should not be considered part of the bankruptcy estate (Ct. Doc. No. 148). The Court held a hearing on the motion on March 16, 2010, and took the matter under advisement. Objections to the motion were filed by Eugene O'Neil (the "Debtor") and the Chapter 7 trustee (the "Trustee").

### JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

#### BACKGROUND

Ms. O'Neil is the ex-spouse of the Debtor.  In March of 2007, Ms. O'Neil filed a petition for divorce in the Merrimack County Superior Court (the "marital court").  At the time the petition for divorce was filed, the Debtor was the sole stockholder in Deployment Technologies, Inc. ("DTI").  During the pendency of the divorce, the marital court appointed a receiver over DTI.  The marital court's order indicates that the receiver "shall have complete authority to take custody of all assets of [DTI], including all bank accounts, and to manage [DTI] . . . ."  Additionally, the marital court ordered the receiver to determine whether liquidation or continuation of the business was in the best interest of DTI.

Before the marital court entered a final divorce decree, the Debtor filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code[1] on November 12, 2007.  On March 10, 2008, this Court granted the Trustee's motion to sell the Debtor's stock interest in DTI for $400,000 (Ct. Doc. No. 71).  Presently, the Trustee is holding the $400,000 proceeds in escrow pending this Court's decision on final distribution.  On January 29, 2009, the marital court entered its final divorce decree awarding sixty percent of the proceeds of DTI to Ms. O'Neil and forty percent of the proceeds of DTI to the Debtor, subject to its allocation in the Debtor's bankruptcy proceeding.

Ms. O'Neil now moves this Court to determine that, as a result of the marital court's order to appoint a receiver and pursuant to the holdings in Davis v. Cox, 356 F.3d 76 (1st Cir. 2004) and In re Skorich, 332 B.R. 77 (Bankr. D.N.H. 2005), DTI's stock never became part of the Debtor's bankruptcy estate.  Ms. O'Neil argues that this Court should give deference to the marital court, distribute the proceeds pursuant to the final divorce decree, and award the Trustee's fees out of the bankruptcy estate's share of the proceeds.  The Trustee objects to Ms. O'Neil's motion and argues that a receiver was appointed to manage DTI but did not take possession of the Debtor's stock ownership.  As such, the share

---

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8.

of stock and now the proceeds are part of the bankruptcy estate. However, the Trustee does not object to distribution in conformity with the final divorce decree. The Debtor joined in the Trustee's objection, but he contends that Ms. O'Neil's action to enforce the divorce decree in this Court requires a separate motion requesting such relief. The Debtor also argues that the proceeds should be used to pay his federal tax liens before Ms. O'Neil's claim, since the tax liens have priority status in bankruptcy.

## DISCUSSION

The issue before this Court is whether the Debtor's stock ownership in DTI is property of the estate. As a preliminary matter, the Debtor argued at the hearing that any act by Ms. O'Neil to enforce the divorce decree requires a separate motion. In addition, the Debtor argues that the proceeds from the sale should first be used to pay his federal tax liens as they are priority liens.

### I. The Debtor's Standing to Object to Ms. O'Neil's Motion

Under 11 U.S.C. § 502, only a "party in interest" may object to a claim against the estate. Generally, after a trustee is appointed in Chapter 7 cases, a debtor is no longer considered a "party in interest" that has standing to object to a creditor's claim. Silverman v. Leucadia, Inc. (In re Silverman), 37 B.R. 200, 201 (S.D.N.Y. 1982). However, courts have found that there are limited circumstances in which a debtor may have standing to object to a creditor's claim.

The First Circuit in Kowal v. Malkemus (In re Thompson), 965 F.2d 1136 (1st Cir. 1992) developed a two-prong test to determine whether a Chapter 7 debtor has standing to object to creditor claims. "First, the debtor must demonstrate that he/she is a party aggrieved by the allowance of the claim." In re Choquette, 290 B.R. 183, 188 (Bankr. D. Mass. 2003). Though a debtor is not usually considered a party aggrieved, "[t]here are two exceptions: (1) if the debtor can show that a successful appeal would generate assets in excess of liabilities, entitling the debtor to a distribution of surplus . . ., or (2) the order appealed from affects the terms of the debtor's discharge in bankruptcy." Id. at 189 (quoting In re Thompson, 965 F.2d at 1144, n.12). "Second, the debtor must show that the Chapter 7 trustee has

'failed or refused to perform a fiduciary duty imposed by the Bankruptcy Code.'" Id. (quoting In re Thompson, 965 F.2d at 1148).

In this case, there is no evidence to show that a surplus will exist in the estate after the payment of all of the Debtor's debts. Moreover, the Debtor fails to show the Court how Ms. O'Neil's motion will affect his discharge. Thus, the Debtor has not met the first prong of the In re Thompson test in demonstrating he is a "party aggrieved" by Ms. O'Neil's claim. Similarly, the Debtor has not met the second prong of the In re Thompson test since he makes no assertion that the Trustee "failed or refused to perform a fiduciary duty imposed by the Bankruptcy Code." Instead, the Debtor only joins in the Trustee's objection to Ms. O'Neil's motion, and argues that the proceeds of the sale should foremost be used to pay the Debtor's priority federal tax liens. Because any interest in the proceeds of the sale belongs to the Trustee and the Debtor is not a "party in interest," the Court finds that the Debtor lacks standing to oppose Ms. O'Neil's motion.

**II.     Davis v. Cox and In re Skorich**

The decisions in Davis and Skorich discussed the implications of a marital court's order of escrowed funds on property of the estate in bankruptcy proceedings. In Davis and Skorich, a divorce petition was filed and the marital courts ordered certain funds be held in escrow. Subsequent to the order placing the funds in escrow, one of the spouse's filed a bankruptcy petition. The non-debtor spouse in each case was granted relief from the automatic stay to resolve the pending divorce. Only after the bankruptcy filing did the marital court issue its final divorce decree. In both cases, it was determined that the escrowed funds were not property of the bankruptcy estate and could be disbursed in accordance with the divorce decree. Central to the decisions in Davis and Skorich is the reasoning that the marital court order to place funds in escrow "operated as an attachment of those funds" in favor of the non-debtor spouse. Davis, 365 F.3d at 93-94; Skorich, 332 B.R. at 86-87 ("[T]he appointment of a receiver and the placement of funds in escrow pursuant to court order are analogous."). Since the escrowed funds were

"effectively attached," neither party held legal title in the funds.  Instead, legal titled passed to the attorneys who held the escrow account, and only the debtor's contingent equitable interest passed to the bankruptcy estate.  Id.  As a result, the escrowed funds never became part of the bankruptcy estate, and the bankruptcy estate only retained an interest in the portion of the funds that were awarded to the debtor as a result of the divorce decree.

### III.    The Present Case

Ms. O'Neil purports that the Debtor's status as sole shareholder results in no meaningful distinction between DTI, the business, and the Debtor's shares in DTI.  Ms. O'Neil argues, then, that the marital court's appointment of a receiver over DTI also included a receivership over the Debtor's stock shares in DTI.  When this occurred, Ms. O'Neil reasons, the Debtor was divested of legal title to the shares in DTI resulting in only the Debtor's contingent equitable interest passing to the bankruptcy estate.  Consequently, the stock shares in DTI were never part of the bankruptcy estate.  Ms. O'Neil moves the Court to distribute the proceeds outside the bankruptcy in accord with the divorce decree.

At first glance, the facts of this case seem identical to the facts in both Davis and Skorich.  However, this case contains a very important distinction which prevents the rationale in either case from applying here.  Though the marital court placed DTI under receivership, the receivership cannot have been said to act as lien or attachment on the Debtor's stock shares in DTI.  The marital court's order is not even clear whether the receivership placed an effective attachment on DTI let alone the shares in DTI.

Although receiverships have been held to be analogous to placing funds in escrow, the language of the marital court order does not seem to indicate a similar finding as a result of the receiver being appointed in this case.  The order stated that the receiver was to "manage" DTI and determine whether it was in the best interest of DTI to continue operation or be liquidated.  Furthermore, the only alienation restriction placed on the Debtor through the receivership with respect to DTI was that he could not "transfer, pledge or otherwise encumber any of the *assets of the business*." (emphasis added).  No reference is made as to receivership over the Debtor's stock shares in DTI.  Based on the marital court order, it appears a receiver was appointed

simply for management purposes.  It would be a stretch for this Court to find that the receivership here effectively created a lien in DTI in favor of Ms. O'Neil.  But even if the Court were to find that that were the case, without further language, this Court cannot conclude that the Debtor's shares of stock in DTI were included under the purview of the receivership.  Consequently, the Debtor's legal title in his shares of DTI did not divest prior to the bankruptcy filing but instead passed into the Debtor's bankruptcy estate.  As part of the bankruptcy estate, this Court has the authority to determine proper distribution of the proceeds.

At the hearing, neither party objected to marital court's determination as to distribution.  Moreover, the Court finds no reason to deviate from the marital court's well-reasoned order in deciding each party's entitled share of DTI.  Accordingly, the Court holds that the Debtor's stock in DTI was part of the bankruptcy estate.  Pursuant to the Court's March 2008 order (Ct. Doc. No. 71), the Trustee is entitled to fees from the gross sale proceeds of the DTI stock after which Ms. O'Neil is entitled to sixty percent of the net proceeds, with the remaining forty percent returning to the bankruptcy estate.

## CONCLUSION

For the aforementioned reasons, the Court denies Ms. O'Neil's motion for determination that proceeds from sale of DTI should not be considered part of the debtor's bankruptcy estate.  The Trustee is entitled to fees from the gross sale proceeds of the DTI stock after which Ms. O'Neil is entitled to sixty percent of the net proceeds, with the remaining forty percent returning to the bankruptcy estate.  This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order consistent with this opinion.

DATED this 12th day of April 2010, at Manchester, New Hampshire.

/s/ Mark W. Vaughn
Mark W. Vaughn
Chief Judge